KEN SCHAEFER AUTO AUCTION, INC. *v.* TUSTISON.

[No. 20,096. Filed June 4, 1964.]

*Ralph B. Gregg, Richard P. Watson* and *Gregg, Fillion, Hughes & Northrup,* of counsel, all of Indianapolis, for appellant.

*Joe L. Tipton,* of Indianapolis, for appellee.

PFAFF, J.—This is an appeal from an award of the Full Industrial Board of Indiana granting compensation to appellee for injuries allegedly sustained in an accident arising out of and in the course of his employment by the appellant.

The petition for compensation was heard by a single member of the Board who found that on April 21, 1962, appellee was an employee of appellant at an average

weekly wage of $10.00; that on said date appellee received personal injuries by reason of an accident arising out of and in the course of his employment with the appellant, of which the appellant had knowledge but did not furnish statutory medical attention; that appellee's injury was to his back requiring an operation and resulted in temporary total disability to November 15, 1962; that appellee's injury has reached a permanent and quiescent state and has resulted in 15 per cent permanent partial impairment to the man as a whole; and that appellee incurred the following medical and hospital expenses for the treatment of said injury for which appellant is liable; Methodist Hospital, $1051.41; Indiana Brace Shop, Inc., $85.00; and Dr. A. R. Lasich, $150.00.

Based upon such findings the hearing member ordered and adjudged that appellee have and recover of and from the appellant compensation for 26 weeks for temporary total disability at the rate of $10.00 per week commencing April 21, 1962, and in addition thereto, compensation for a specific period of 75 weeks at the rate of $10.00 per week for 15 per cent permanent partial impairment to the man as a whole. It was further ordered that appellant pay the medical expenses incurred by appellee.

Thereafter, appellant filed its application for a review of such award by the Full Board. Said Board affirmed the findings and award of its hearing member except for increasing the amount of compensation from $10.00 per week to $21.00 per week for a period of 26 weeks and from $10.00 per week to $21.00 per week for a period of 75 weeks. The total amount of the award amounted to $3,407.41.

Error assigned for reversal is that the award of the Full Industrial Board of Indiana is contrary to law. Appellant's assignment of error questions the findings and award of the Board and alleges that appellee's disability was not the result of an accidental injury arising out of and in the course of his employment by appellant.

Thus, the primary question presented by this appeal is the correctness of the finding of the Industrial Board as to whether the appellee was injured in an accident which arose out of and in the course of his employment by the appellant.

This court is committed to the rule that it will not weigh the evidence; and if there is any evidence of probative value to sustain the award of the Industrial Board, the same will be sustained considering only the evidence most favorable to appellee. *Kariger Motors, Inc.* v. *Kariger et al.* (1961), 132 Ind. App. 85, 88, 173 N. E. 2d 916, and cases therein cited.

The evidence in the case before us is in conflict but that which is most favorable to appellee is as follows:

Appellee, a man of 39 years of age, since about November 15, 1962, has been employed by the Indianapolis and Midwest Auto Auctions driving cars to other cities, at approximately $45.00 to $50.00 per week. From some time during the summer of 1961 until April 21, 1962, the date on which the alleged accident occurred, he had been employed two to four days a week by appellant herein, Ken Schaefer Auto Auction, Inc., doing general labor, odd jobs and driving cars at an average weekly wage of $35.00. Appellee testified these wages were paid to him each day in cash, except on

Thursdays when he was paid by check. Appellee further testified that prior to April 21, 1962, he had done some painting for the appellant herein and that he was paid by cash.

Appellee testified, and the record so discloses, that on the day of the accident in question appellee started working for the appellant herein at about nine o'clock in the morning at the request of a Mr. Robinson, another employee of appellant. Mr. Robinson and appellee painted all day, using appellant's ladders and paint, with the exception of about half an hour off for lunch. At about six o'clock appellee fell approximately 15 feet from the ladder on which he was standing to paint the rafters in the ceiling of appellant's place of business, to the cement floor of said establishment. He was taken to the hospital where he stayed until May 23, 1962, incurring the medical bills herein complained of.

Upon direct examination Dr. Anthony Robert Lasich testified that he first saw the appellee on April 21, 1962, in the emergency room of Methodist Hospital; that he (appellee) was lying on a cart in considerable distress at that time and, after examination and X-ray studies the diagnosis of compression fracture of the second lumbar vertebra was made and appellee was admitted to the hospital for care; that while in the hospital appellee developed a marked paralytic ileus immediately following his injury which required intensive care; that he also suffered considerable emotional distress and was a behavioral problem in the initial phases of his hospitalization for which the services of a psychiatrist were required; that his condition was stabilized, he was placed in an extension body plaster which broke and a second plaster was applied. On May 23, 1962, appellee was dismissed from the hospital. On

dismissal he was seen in the doctor's office and was unable to tolerate the cast and the cast was accordingly removed and he was placed in a hyperextension brace. Appellee was next seen in the doctor's office on June 5, 1962, at which time X-rays were taken and the fracture appeared to be healing. He was seen again in the doctor's office on the 8th of June for brace adjustment but no more X-rays were taken. Asked whether at the time the X-rays were taken Dr. Lasich had an opinion based upon reasonable medical certainty of the percentage of permanent partial impairment, the doctor stated that at that time appellee's residual impairment would range between ten and twenty per cent of the man as a whole.

The appellant specifically alleges four propositions in support of its argument. The first proposition is that the finding of the majority of the Industrial Board is contrary to law in that there is no probative evidence in the record that appellee has permanent partial impairment of 15 percent of the man as a whole. Appellant cites cases in support of the rule that an award of workmen's compensation must be based upon something more than mere guess, surmise, conjecture or possibility. We fully agree with this statement of the law, but are of the opinion that the Board had sufficient facts before it on which to base the award. The evidence presented to the Board was that the appellee had ten to twenty percent permanent partial impairment. The existence of permanent partial impairment is a question of fact and this court must accept the facts so found unless there be evidence of such a conclusive character as to force a contrary conclusion. In order to reach a contrary conclusion, we may not weigh the evidence nor may we disregard any reasonable inference which the Indus-

trial Board may have drawn from the facts which the evidence tends to establish. *George* v. *Interstate Metal Products, Inc.* (1955), 125 Ind. App. 406, 413, 126 N. E. 2d 258; *Jenkins* v. *Pullman Standard Car Mfg. Co.* (1957), 127 Ind. App. 173, 175, 139 N. E. 2d 566; *Bundy* v. *Concrete Ready-Mix Co.* (1960), 130 Ind. App. 542, 545, 167 N. E. 2d 477.

The uncontradicted evidence in the instant case was that the appellee has between 10 to 20 per cent permanent partial impairment to the man as a whole, and it is our opinion that the Industrial Board acted within its province in arriving at the conclusion that appellee has a 15 per cent permanent partial impairment of the man as a whole and that such conclusion of fact is based upon probative evidence and not upon a mere guess, conjecture, surmise or possibility.

Appellant next contends that the finding of an employment relationship by the Board was contrary to law because the evidence of the appellee was untrustworthy and that the evidence rebutting appellee's claim was of such a conclusive character as to force a contrary conclusion.

An examination of the record discloses that the evidence presented to the Board was sharply conflicting. It has been held many times by this court and the Supreme Court that if the evidence is conflicting or is susceptible to different conclusions the award of the Board must be affirmed. *Teter* v. *Mid-State Poultry and Egg Company* (1962), 134 Ind. App. 452, 184 N. E. 2d 824, 826, and cases therein cited. Further, it was stated in *Square D Company* v. *O'Neal* (1946), 117 Ind. App. 92, 96, 66 N. E. 2d 898:

" . . . it was the exclusive province of the Industrial Board, as the trier of the facts, to weigh the evidence, *determine the credibility of the witnesses and decide with whom the truth lay,* and its finding upon the questions of fact cannot be disturbed on appeal, or our judgment as to the weight of the evidence substituted for that of the Industrial Board." (Our emphasis).

Appellant further claims that the appellee had witnesses available to testify as to the employment relationship but did not call them to the stand. It is well settled that the number of witnesses is not to be counted by the trier of the case, but the evidence given by them is to be weighed, and the preponderance thereof does not depend on the greater number of the witnesses in the particular case. This rule is well stated by our Supreme Court in the case of *Indianapolis St. R. Co.* v. *Johnson* (1904), 163 Ind. 518, 525, 72 N. E. 571, as follows:

" . . . As a general rule, the preponderance of the evidence in a case does not depend upon or mean the greater number of witnesses testifying upon the matter or matters in issue. Counsel mistake the law in their contention that where the witnesses in a case are equally credible in respect to their character, then, in such case, the preponderance of the evidence depends upon the number of witnesses testifying. This certainly is not the true test in any case. Any number of witnesses may be of equal credibility and possess equal information, and still differ greatly in the amount or weight of their evidence. The authorities generally affirm that the number of witnesses are not to be counted by the jury or court trying the case in order to determine upon which side is the preponderance, but the evidence given by them is to be weighed, and the preponderance thereof does not depend on the greater number of the witnesses in the particular case."

It is apparent that both sides presented testimony to the Board concerning the matter of employment. It was for the Board to determine the weight and relevancy of the testimony presented regardless of the number of witnesses called by either the appellant or appellee.

Appellant's third proposition is that the finding of the majority of the Industrial Board is contrary to law in that it found appellee was in the employ of appellant "at an average weekly wage of $35.00 as a painter," whereas there is no such evidence in the record. However, an examination of the record discloses the Board found appellee was in the employ of appellant "at an average weekly wage of $35.00" and not "at an average weekly wage of $35.00 as a painter" as appellant states. In view of the fact that the Board found appellee was in the employ of the appellant, it is immaterial whether he was in its employ as a *painter* or was employed to do sweeping, general labor or driving cars.

Finally appellant states that the award of the Industrial Board is contrary to law in that the decision does not rest upon a substantial factual foundation and must be reversed if it appears the evidence was devoid of probative value or the quantum of legitimate evidence was so proportionately meager as to show that the finding does not rest upon a rational basis. In support of this contention, appellant cites among other cases, the case of *Pollock* v. *Studebaker Corporation* (1952), 230 Ind. 622, 105 N. E. 2d 513. An examination of this case discloses the following language by Judge Gilkison, speaking for the Supreme Court:

"The Industrial Board is the sole fact-finding body in a proceeding of this kind provided for by the Workmen's Compensation Law, §§40-1509 to 40-1513 inclusive, Burns' 1952 Replacement. *Blue*

*Ribbon Pie Kitchens, Inc.* v. *Long et al.* (1952), 230 Ind. 257, 103 N. E. 2d 205, and cases there cited. "On appeal this court cannot weigh the evidence heard by the Industrial Board and determine for whom it preponderates. *Blue Ribbon Pie Kitchens, Inc.* v. *Long et al. supra; Vonnegut Hardware Co.* v. *Rose* (1918), 68 Ind. App. 385, 120 N. E. 608; *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 118, 119, 26 N. E. 2d 399.

"Our jurisdiction on appeal is limited only to an examination of the evidence to ascertain whether the finding of the Industrial Board does not rest upon a substantial factual foundation. We may reverse the award only if this negative situation appears from the evidence. We have heretofore held that this situation would be shown only: (1) If it should appear that the evidence upon which the Industrial Board acted was devoid of probative value; (2) That the quantum of legitimate evidence was so proportionately meagre as to show that the finding does not rest upon a rational basis or; (3) That the result must have been substantially influenced by improper considerations. *Blue Ribbon Pie Kitchens, Inc.* v. *Long et al., supra; Warren* v. *Indiana Telephone Co., supra,* pp. 118, 119.

"This court frequently has said that the Workmen's Compensation Law is grounded in justice and should be liberally construed to accomplish the end for which it was enacted. *Blue Ribbon Pie Kitchens, Inc.* v. *Long et al., supra* and cases there cited. This is a rule and guide for all authorities charged with the administration of the Workmen's Compensation Law, with special application to the considerations of the Industrial Board in making its findings of facts in cases which it tries. When it has been governed by this rule of liberal construction of the evidence, the courts of appeal generally have approved findings so based. . . . We cannot say that the evidence upon which the board acted was without probative value; that the quantum of evidence was so meagre as to show that the finding does not rest upon a rational basis; or that the finding was influenced by improper considerations."

Examination of the record in the case before us fails to show that the Board acted other than in a regular and proper manner. Suffice it to say ■ that a rather careful study does not compel us to reverse such award, since the evidence was in conflict and there is competent evidence, in our opinion, to support such award.

The award of the Board is therefore affirmed.

Hunter, C. J., Kelley and Mote, JJ., concur.

NOTE.—Reported in 198 N. E. 2d 873.