MIDTOWN CHIROPRACTIC,
Appellant–Plaintiff,

v.

ILLINOIS FARMERS INSURANCE
COMPANY, Appellee–
Defendant.

No. 49A02–0312–CV–1047.

Court of Appeals of Indiana.

July 30, 2004.

James F. McCarthy, III, Katz, Teller, Brant & Hild, Cincinnati, OH, Michael B. Langford, A. Jack Finklea, Scopelitis, Garvin, Light & Hanson, Indianapolis, IN, Attorneys for Appellant.

Laura S. Reed, Riley Bennett & Egloff, LLP, Indianapolis, IN, Attorney for Appellee.

## OPINION

MAY, Judge.

Midtown Chiropractic appeals a summary judgment for Illinois Farmers Insurance Co. Midtown raises two issues on appeal, which we restate as:

1. Whether an assignment to a health care provider of an accident victim's right to proceeds from a claim for damages is a valid equitable assignment or an invalid assignment of a personal injury claim; and

2. Whether a health care provider may bring a direct action against an insurer when the insurer settles with the accident victim but does not honor the accident

victim's assignment of his right to the settlement proceeds.

We reverse in part and remand.

## FACTS

Midtown treated Timothy Sexton after he was injured in an automobile accident with a driver who was insured by Illinois Farmers. In exchange for Midtown's services, Sexton executed an Assignment of Rights to Receive Benefits and/or Proceeds of Settlement or Judgment in which he assigned to Midtown the right to be paid out of any settlement or proceeds for the injuries he suffered in the accident. In the assignment, Sexton directed that payments be made directly to Midtown before any payments were made to him. Midtown sent notice of the assignment to Illinois Farmers and asked that Midtown be included "as a named co-endorser on any disbursement check" Illinois Farmers might issue.[1] (App. at 13.)

On June 26, 2001, Sexton and Illinois Farmers entered into a settlement and Sexton executed a release of all his claims against Illinois Farmers and its insured. In exchange for the release, Illinois Farmers paid Sexton $9,000. Neither Illinois Farmers nor Sexton paid any proceeds to Midtown. The value of the treatment Midtown provided to Sexton was $3,010.

## DISCUSSION AND DECISION

### 1. *Assignment of Proceeds*

Midtown characterizes Sexton's assignment as an "equitable assignment." Such an assignment is

a conveyance recognized by courts of equity where one has conveyed an expectant interest to another, and that the transfer is made binding upon the reli-

ance or other consideration of the assignee as an executory contract. Or, stated differently, where the facts and circumstances are such that equity places a duty to convey upon the assignor, he will be estopped from denying the validity of the transfer.

*Carr v. Dorenkamper,* 556 N.E.2d 1333, 1336 (Ind.Ct.App.1990), *trans. denied.*

An equitable assignment may be made of choses in action, possibilities, expectancies, or of mere contingencies. *Id.* at 1337. No particular words or particular form of instrument is necessary to effect an equitable assignment; any language that shows the intention of the owner of a chose in action to transfer it so that it will become the property of the transferee, amounts to an equitable assignment. *Id.* at 1336. The doctrine of equitable assignment has a long and distinguished history in Indiana. *E.g., Eissler v. Hoppel,* 158 Ind. 82, 62 N.E. 692 (1902).

As a general proposition in Indiana, torts for personal injuries and for wrongs done to the person, reputation, or feelings of the injured party are unassignable. *Allstate Ins. Co. v. Axsom,* 696 N.E.2d 482, 485 (Ind.Ct.App.1998), *trans. denied* 706 N.E.2d 181 (Ind.1998). However, the types of torts that may not be assigned have become so narrow that nonassignability of tort actions is now the exception while assignability is the general rule. *Id.; and see Picadilly, Inc. v. Raikos,* 582 N.E.2d 338, 340 (Ind.1991) (tort-based choses in action are assignable if they arise out of injuries to personal property, but torts for personal injuries remain unassignable).

---

1. As discussed below, it is unclear whether Illinois Farmers was notified of the assignment before the settlement or after.

While Indiana courts have not yet addressed the specific question before us, a number of other jurisdictions have recognized a distinction between the assignment of a *claim* for personal injury and the assignment of the *proceeds* of such a claim. *E.g., Charlotte–Mecklenburg Hosp. Auth. v. First of Georgia Ins. Co.,* 340 N.C. 88, 455 S.E.2d 655, 657 (1995), *reh'g denied* 340 N.C. 364, 458 S.E.2d 186 (1995). The assignment of a *claim* gives the assignee control of the claim and promotes champerty.[2] *Id.* Such a contract is against public policy and void. *Id.* The assignment of the *proceeds* of a claim does not give the assignee control of the case and there is no reason it should be invalid.[3] *Id.* The *Charlotte–Mecklenburg* court accordingly held the plaintiff could enforce liens on its claims for medical expenses and that the assignment was valid. *Id.*

In *Achrem v. Expressway Plaza Ltd. Partnership,* 112 Nev. 737, 917 P.2d 447 (1996), *reh'g denied,* a plaintiff accident victim assigned the proceeds from his lawsuit to the lessor of a building his mother rented. The lessors counsel advised the plaintiffs lawyer of the assignment, but the plaintiffs attorney released the funds to the plaintiff. The lessor filed a complaint against the attorney and the *Achrem* court held the attorney improperly failed to comply with the assignment agreement.

The court noted the general common law rule that an assignment of the right to a personal injury action was prohibited, but also noted the distinction between the assignment of an action itself and the assignment of the proceeds of that action:

[T]he policy considerations underlying the prohibition against assignments of tort actions are not present in the assignment of the proceeds of an action. Specifically, when a tort action is assigned, the assignor loses the right to pursue the action. However, when the proceeds of an action are assigned, the assignor retains control of the action, and the assignee cannot pursue the action independently. Based on this reasoning, many courts allow assignment agreements that assign the proceeds of a tort action. For example, medical professionals can obtain a lien against a future personal injury award in exchange for medical services.

*Id.* at 448–49 (citations omitted).

The ability to assign portions of the proceeds of the suit allows an injured plaintiff to obtain an attorney through a contingency fee arrangement and allows the plaintiff to pursue the action without being burdened by medical bills associated with the accident. *Id.* at 449. The cost of health care may be considerable, and patients injured by the actions of others are often not in a position to pay for that care

**2.** Champerty is "An agreement between a stranger to a lawsuit and a litigant by which the stranger pursues the litigant's claim as consideration for receiving part of any judgment proceeds." Black's Law Dictionary 224 (7th ed.1999).

**3.** Illinois Farmers argues at the outset the language of Sexton's assignment "assigns more than proceeds." (Br. of Appellee, Illinois Farmers Insurance Company at 7.) Sexton assigned his "right to collect or receive payment" for compensation for his injuries. (App. at 14.) Illinois Farmers' argument appears to be that this language assigns "more than proceeds" because it does not refer explicitly to "proceeds." The assignment directs any insurer to "pay Midtown Chiropractic directly *the amount outstanding* before making any payment to [Sexton]." (*Id.*) (emphasis supplied). Despite the absence of the word "proceeds," it is apparent that nothing in the language of this assignment gives Midtown control of Sexton's tort case but rather assigns "payment." We therefore find this was an assignment of proceeds and not an assignment of Sexton's personal injury claim.

when they need and receive it. Those costs are frequently the major element of special damage in a tort case. *Hernandez v. Suburban Hosp. Assn., Inc.*, 319 Md. 226, 572 A.2d 144, 148 (1990). If the assignment of those funds is not permitted, the health care provider may be forced to pursue its claim expeditiously against the patient, a likely effect of which will be to involve the patient in double litigation and put at risk the patients personal assets. *Id.* Enforcement of an assignment can avoid this problem. If a hospital has some assurance of payment from the proceeds of the tort action, it may forego immediate collection efforts and thus allow the patient a measure of financial stability. *Id.*

■■■■ In *In re Musser*, 24 B.R. 913, 921–22 (W.D.Va.1982), the court characterized an assignment of potential proceeds to a hospital as akin to contingent fee agreements typically entered into in tort cases:[4]

The hospitals seek recoveries limited to the value of services actually supplied to the debtors. And the debtors retained

complete control over their personal injury cases. The hospitals rights exist only in the proceeds, not in the debtors causes of action.... The equitable assignments in these cases may be analogized to an attorneys contingent fee contract. Neither transfers any part of the cause of action. Instead, each operates only on moneys, if and when, recovered from third parties. As the enforceability of attorneys contingent fee arrangements in personal injury claims is well established, the court has difficulty understanding why equitable assignments of personal injury proceeds should be declared unenforceable.

We accordingly hold, as a matter of first impression, an accident victim's assignment to a health care provider of the proceeds of a personal injury claim is a valid equitable assignment.[5] Therefore, Sexton's assignment to Midtown of his right to payment from Illinois Farmers was a valid equitable assignment.[6]

---

4. Such agreements are, of course, commonly used in Indiana and are recognized and regulated by our supreme court. *See* Ind. Professional Conduct Rule 1.5:

A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

5. We acknowledge the authorities Illinois Farmers relies on in support of the premise

there should be no distinction between the assignment of a claim and the assignment of the proceeds of a claim. *See, e.g., Quality Chiropractic, P.C. v. Farmers Ins. Co. of Arizona*, 132 N.M. 518, 51 P.3d 1172 (Ct.App. 2002). We believe the better approach is the one supported by the policies and reasoning articulated in *Achrem* and similar decisions and we decline to follow the decisions that hold otherwise.

6. We note that in addition to the type of equitable assignment we recognize today, the general assembly has enacted statutes authorizing certain health care providers to hold liens on certain judgments or settlements in certain situations. Specifically, Ind.Code § 32–33–4–1 provides in pertinent part that a hospital may hold a lien for the reasonable value of its services "on any judgment for personal injuries rendered in favor of any person ... who is admitted to the hospital and receives treatment, care, and maintenance on account of personal injuries received as a result of the negligence of any person or corporation." Ind.Code § 32–33–

### 2. Right to Enforce Assignment Against Insurer

■ Illinois Farmers argues even if the assignment is valid, Midtown cannot enforce it in a direct action against Illinois Farmers. An unqualified assignment generally operates to transfer to the assignee all of the right, title and interest of the assignor in the subject of the assignment. *Hernandez*, 572 A.2d at 148. In these circumstances, the assignment vests equitable title to the assigned funds in the assignee. Thus, the *Hernandez* court determined, upon delivery of the assignment all of the accident victims right, title and interest in any proceeds recovered from her tort action, up to the amount of the hospitals bill for services rendered, was equitably transferred to the hospital.

■ Equitable assignments of things to be acquired in the future, where they are enforceable in equity, attach to funds when the funds come into being. *Methodist Hospital of Ind., Inc. v. Town & Country Mut. Ins. Co.*, 136 Ind.App. 184, 198, 197 N.E.2d 773, 779 (1964), *reh'g denied* 136 Ind.App. 184, 198 N.E.2d 873 (1964).[7] In that decision we relied in part on *Goldwater v. Nitzberg*, 161 Misc. 847, 292 N.Y.S. 119, 120 (N.Y.Sup.Ct.1936), where an accident victim was treated at a hospital for his injuries and executed an assignment to the hospital of any money he might recover from the party liable for his injuries. The victim's attorney settled the suit. The court noted that between the execution of the assignment and the receipt of the proceeds of the cause of action the plaintiff had a mere equitable assignment. When the amount of the settlement was actually paid over to the attorney, the equitable title ripened into a legal title sufficient to sustain an action by the assignee against the attorney. 292 N.Y.S. at 120.

5–3 provides in pertinent part that an emergency ambulance service has a lien for all reasonable and necessary charges for the provision of its services to a patient upon any action accruing to the patient because of the illness or injuries that gave rise to the action and necessitated the provision of emergency ambulance services. The lien applies to any amount obtained or recovered by the patient by settlement or compromise rendered or entered into by the patient or by the patient's legal representative.

Because the legislature did not explicitly "give chiropractors the right to collect from alleged tortfeasor's [sic] insurance companies for amounts paid in settlement of disputed claims" (Br. of Appellee, Illinois Farmers Insurance Company at 11), Illinois Farmers asserts Midtown has no such right. Illinois Farmers characterizes these statutes as "in derogation of the common law prohibition against the assignment of the right to all or part of the proceeds of a personal injury action." (*Id.* at 10.) As explained above, we find there is no such "common law prohibition." We presume the legislature is aware of the common law and does not intend to make any change therein beyond what it declares either in express terms or by unmistakable implication. *State Farm Fire & Cas. Co. v. Structo Div., King Seeley Thermos Co.*, 540 N.E.2d 597, 598 (Ind.1989). We accordingly decline to hold the general assembly, in establishing these liens, intended to thereby deprive all health care providers other than hospitals or emergency ambulance services of the benefits of an equitable assignment as recognized at common law.

7. In the *Methodist Hospital* case, we upheld a demurrer the trial court had sustained because the hospital did not allege there was ever a fund in existence in the insurer's possession. 136 Ind.App. at 198, 197 N.E.2d at 779–80. That panel did not explicitly indicate the nature of the presently-existing "fund" that must be alleged, nor did it address whether that requirement was consistent with its reliance on "the doctrine of equitable assignment of a thing not yet in being but having a potential existence." *Id.* at 195, 197 N.E.2d at 778. To the extent the *Methodist Hospital* decision may be interpreted to require, for an equitable assignment, a presently existing "fund" in addition to "a thing not yet in being but having a potential existence," *id.*, we decline to follow it.

■ Similarly, when the party that pays a sum to the accident victim in disregard of an assignment to a health care provider is an insurer, the assignee health care provider may bring an action against the insurer. *See, e.g., Reddy v. Zurich Gen. Acc. & Liability Ins. Co.*, 171 Misc. 69, 11 N.Y.S.2d 88, 91 (N.Y.Sup.Ct.1939). There, the court went on to note the nature of the action was

> not altered by the fact [the insurer] has already paid the fund to [the accident victim] in violation of the rights of plaintiff's assignor. As an incident of this action to enforce the lien, [the insurer] may be required to account for, and pay over, to plaintiff, the amount covered by the lien, though theretofore distributed by them and thus dissipated.

*Id.*

■ We believe there are genuine issues of material fact as to when the assignment was executed and whether Illinois Farmers was notified of the assignment prior to its payment of settlement proceeds to Sexton. Because the resolution of these issues might well have a bearing on whether Midtown may enforce the assignment against Illinois Farmers, we remand for additional factfinding.

The assignment document included in Midtown's appendix is largely illegible and the date the assignment was executed cannot be determined with certainty on the record provided to us. The designated evidence includes a letter from Midtown's former counsel dated November 23, 2000 notifying Illinois Farmers of the assignment. (App. at 13.) It therefore appears the assignment might have been executed at least seven months before Sexton and Illinois Farmers settled.

However, Midtown states in its complaint the assignment was executed on June 26, 2001 (*id.* at 5), the same day Sexton and Illinois Farmers settled. (*Id.*

at 42.) Midtown's complaint further states the assignment was provided to Illinois Farmers "by correspondence from Plaintiff's previous counsel, February 20, 2002[.]" (*Id.* at 6.) Because there is a question of fact whether the assignment was provided to Illinois Farmers before it issued the settlement funds to Sexton, summary judgment on the issue of its enforcement by Midtown against Illinois Farmers was inappropriate.

■ Sexton's assignment of the proceeds of his settlement with Illinois Farmers was a valid equitable assignment, and such assignments may be directly enforceable against an insurer who pays a sum to an accident victim in disregard of a valid assignment. We must therefore accordingly reverse the summary judgment for Illinois Farmers and remand so that the trial court may determine whether Illinois Farmers had notice of the assignment before it settled with and paid Sexton.

Reversed in part and remanded.

SULLIVAN, J., and VAIDIK, J., concur.