ATTORNEYS FOR APPELLANT
James F. McCarthy, III
Jerome C. Bishop
Katz, Teller, Brant & Hild
Cincinnati, Ohio

Michael B. Langford
A. Jack Finklea
Scopelitis, Garvin, Light & Hanson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Laura S. Reed
Riley Bennett & Egloff, LLP
Indianapolis, Indiana

ATTORNEYS FOR AMICI CURIAE

IND. STATE CHIROPRACTIC ASSOC.
John P. Lowry
Boehm, Kurtz & Lowry
Cincinnati, Ohio

Mark K. Sullivan
Tabbert, Hahn, Earnest & Weddle, LLP
Indianapolis, Indiana

INSURANCE INSTITUTE OF IND., INC.
PROPERTY CASUALTY INSURERS
ASSOCIATION OF AMERICA
John C. Trimble
Richard K. Shoultz
Lewis Wagner
Indianapolis, Indiana

In the

# Indiana Supreme Court

No. 49S02-0503-CV-00096

MIDTOWN CHIROPRACTIC,

*Appellant (Plaintiff below),*

v.

ILLINOIS FARMERS INSURANCE COMPANY,

*Appellee (Defendant below).*

Appeal from the Marion Superior Court, No. 49D06-0302-PL-336
The Honorable Thomas J. Carroll, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 49A02-0312-CV-1047

**May 23, 2006**

**Dickson, Justice.**

In this appeal, a chiropractic clinic seeks to assert an assignment signed by its patient to

collect from a liability insurance company that paid the patient's personal injury tort claim not-withstanding the clinic's notice to the company of the assignment. The trial court granted summary judgment to the defendant, Illinois Farmers Insurance Company, and the Court of Appeals reversed, Midtown Chiropractic v. Illinois Farmers Ins., 812 N.E.2d 851 (Ind. Ct. App. 2004). We granted transfer and affirm the trial court's grant of summary judgment to Illinois Farmers.

The plaintiff-appellant, Midtown Chiropractic, seeks to collect directly from the defendant-appellee, Illinois Farmers Insurance Company, charges of $3,010 for chiropractic care for a patient injured in a collision with an automobile driven by a person insured by Illinois Farmers. Midtown had obtained its patient's signature on an "Assignment of Right to Receive Benefits and/or Proceeds of Settlement or Judgment," sent notice of the assignment to Illinois Farmers, and asked to be included "as a named co-endorser on any disbursement check." Appellant's App'x. at 13-14. But Illinois Farmers later settled the patient's liability claim for $9,000 and paid the full amount directly to the patient. Midtown filed an action against Illinois Farmers on the assignment, seeking damages of $3,010. Illinois Farmers responded with a motion for summary judgment asserting that the assignment was not valid and, alternatively, that as a liability insurer, it was not subject to a direct action by a tort claimant or the claimant's assignee. The trial court granted the motion without specifying any findings of fact or conclusions of law.

Appealing from the trial court's grant of summary judgment for Illinois Farmers, Midtown asserts that the assignment it obtained from its patient is valid and may be enforced directly against Illinois Farmers. We find the determinative issue to be whether this particular assignment constitutes an assignment of a personal injury tort cause of action, which is prohibited under Indiana common law.

Whether the grant of summary judgment to the defendant was proper is determined using the same standard as that used by the trial court, which provides that "summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Reeder v. Harper, 788 N.E.2d 1236, 1240 (Ind. 2003); *see also* Ind. Trial Rule 56(C). All facts and reasonable inferences from them are construed in favor of the non-moving party. Worman Enter., Inc. v. Boone County Solid

Waste Mgmt. Dist., 805 N.E.2d 369, 373 (Ind. 2004). There are no factual disputes in this case related to whether a valid assignment was made. Its resolution is a matter of law.

Midtown contends that the assignment of proceeds from the personal injury claim is enforceable as an equitable assignment. It argues that the assignment it received from its patient is not of the claim itself, but of any proceeds from the claim. Midtown urges that the property interest transferred to it under the assignment is "an immediate and existing right to share in the proceeds of any settlement or the recovery of any judgment to the extent of its fees for the chiropractic treatment," Appellant's Br. at 6, 9-10, and it cites cases from other jurisdictions where assignments of similar interests have been upheld.

Midtown asserts that Indiana courts have long recognized similar assignments of choses in action, as well as contingent interests and expectancies that rest only in mere possibility. According to Midtown, therefore, the Court should recognize the equitable assignment in this case as an enforceable one, given the "long and distinguished history in Indiana" in support of the doctrine of equitable assignment. *Id*. at 8. Midtown also asserts that the assignment in this case does not infringe upon public policy interests that have led courts in the past to prohibit assignments of personal injury claims.

The focus of the assignment in this case, future proceeds from a possible settlement between the assignor and the defendant, describes a chose in action, which is a "proprietary right in personam, such as a debt owed by another person . . . or a claim for damages in tort . . . [or a] right to bring an action to recover a debt, money, or thing." BLACK'S LAW DICTIONARY 258 (8th ed. 2004). Midtown maintains that it has become well-established under Indiana law that such an interest is generally assignable. We discussed the law controlling the assignment of a chose in action in Picadilly, Inc. v. Raikos, 582 N.E.2d 338, 339-40 (Ind. 1991), where we observed that hardly any chose in action was assignable under old common law because of concerns about champerty and maintenance.[1] However, the assignment of such interests has gained gradual ac-

---

[1] Champerty and maintenance refer to arrangements where a party acquires an interest in something merely by participating in a lawsuit in which the party otherwise has no independent status to join. Reichhart v. City of New Haven, 674 N.E.2d 27, 32 n.3 (Ind. Ct. App. 1996). A person, otherwise a stranger to the parties and litigation, giving aid to a litigant and receiving a stake in the dispute constitutes

ceptance over time, beginning with those interests based in contract, and later for torts against personal property. *Id*. at 340. "Today, the non-assignability of a chose in action has become so restricted that it is now the exception to the rule of free assignment." *Id*. (citing Essex v. Ryan, 446 N.E.2d 368, 374 (Ind. Ct. App. 1983)). Thus a contract-based chose in action is considered assignable unless it is purely personal in nature, and one based in tort is assignable if it arises out of injuries to personal property. Picadilly, 582 N.E.2d at 340.

But it remains well-settled in Indiana law that a cause of action in tort to recover for personal injuries is not assignable. *Id*.; *see also* INS Investigations Bureau, Inc. v. Lee, 709 N.E.2d 736, 741 (Ind. Ct. App. 1999); Allstate Ins. Co. v. Axsom, 696 N.E.2d 482, 485 (Ind. Ct. App. 1998); Imel v. Travelers Indem. Co., 152 Ind. App. 75, 78-79, 281 N.E.2d 919, 920-21 (1972). In Picadilly, we declared that the assignment of a legal malpractice claim was invalid as against public policy, choosing not to "allow clients to sell off their claims for pursuit by others." Picadilly, 582 N.E.2d at 345.

Midtown argues that it is not seeking to enforce an assignment of a personal injury claim, but only the assignment of the proceeds from such a claim. The executed Assignment of Benefits states that the patient "irrevocably assigns [his] right to collect or receive payment in any form as and for compensation for any injuries for which [he] receive[s] treatment from Midtown Chiropractic." Appellant's App'x. at 38. The agreement also purports to direct payment to "Midtown Chiropractic directly the amount outstanding before making any payments" to the assignor. *Id*.

Acknowledging the general rule that assignments of personal injury claims are invalid, some jurisdictions have drawn the distinction that Midtown seeks here between assignments of personal injury actions and assignments of the proceeds recovered in such actions, finding the latter to be enforceable. Maryland's highest court has stated that it sees "no danger of champerty or maintenance, nor any other public policy reason to preclude the assignment of expected personal injury claim benefits to secure hospital or medical expenses already incurred." Hernandez

champerty. *Id*. Where the stranger intermeddles in the litigation by promoting, encouraging, or assisting it but does not receive any part of the subject matter of the litigation in return, maintenance is said to have occurred. *Id*.

4

v. Suburban Hosp. Ass'n, Inc., 319 Md. 226, 235, 572 A.2d 144, 148 (1990).  According to the Maryland court, not only does the enforcement of assignments of proceeds from personal injury claims to providers of healthcare services avoid infringement on certain public policy concerns, but it promotes good policy.

> The cost of health care may be considerable . . . and patients injured by the actions of others are often not in a position to pay for that care at the time they need and receive it. . . . Thus, if the assignment of those funds is not permitted, the health care provider may be forced to pursue its claim expeditiously against the patient, a likely effect of which will be to involve the patient in double litigation and put at risk the patient's personal assets.  Enforcement of an assignment can avoid this problem; if given some assurance of payment from the proceeds received from the tort action, the hospital may forego immediate collection efforts and thus allow the patient a measure of financial stability.

*Id*.  The Supreme Court of Nevada has echoed the sentiment that public policy obstacles underlying the exclusion of assignments of personal injury claims are not present in the assignment of proceeds from an action by saying, "[W]hen a tort action is assigned, the assignor loses the right to pursue the action.  However, when the proceeds of an action are assigned, the assignor retains control of the action, and the assignee cannot pursue the action independently."  Achrem v. Expressway Plaza Ltd. P'ship, 112 Nev. 737, 740, 917 P.2d 447, 448 (1996) (citations omitted); *see also* Charlotte-Mecklenburg Hosp. Auth. v. First of Georgia Ins. Co., 340 N.C. 88, 91, 455 S.E.2d 655, 657 (1995); In re Musser, 24 B.R. 913, 920-21 (W.D.Va. 1982); Block v. California Physicians' Serv., 53 Cal.Rptr. 51, 53-55 (Cal. Ct. App. 1966); Grossman v. Schlosser, 244 N.Y.S.2d 749, 750-51 (N.Y. App. Div. 1963).

Other courts have disagreed, however, about the distinction drawn between assignments of claims and assignments of proceeds, finding it "at best . . . a distinction without a difference."  Karp v. Speizer, 132 Ariz. 599, 601, 647 P.2d 1197, 1199 (Ariz. Ct. App. 1982) (quoting Harvey v. Cleman, 65 Wash.2d 853, 858, 400 P.2d 87, 90 (1965)).  These courts have concluded that assignments of rights to proceeds from personal injury claims are unenforceable.  *See, e.g.*, Quality Chiropractic, PC v. Farmers Ins. Co. of Arizona, 2002-NMCA-80, 36, 132 N.M. 518, 529, 51 P.3d 1172, 1183 (N.M. Ct. App. 2002); Town & Country Bank of Springfield v. Country Mut. Ins. Co., 121 Ill.App.3d 216, 218-19, 459 N.E.2d 639, 640-41 (1984); Karp, 132 Ariz. at 602,

647 P.2d at 1200.[2]  And the recognition of assignments of proceeds as something distinct from assignments of personal injury claims, and as being enforceable where assignments of claims are not, has been explained to require an abrogation of the common law rule prohibiting assignments of personal injury claims, something more wisely left for the legislature.  Quality Chiropractic, 2002-NMCA-80 at 32-33, 132 N.M. at 528, 51 P.3d at 1182.

The Indiana legislature has chosen to provide a statutory lien to benefit some, but not all, providers of medical services to patients who may receive tort claim recoveries.  Such a lien is available to hospitals and ambulance operators on proceeds recovered by a patient in litigation related to the incident accounting for the need for hospital or ambulance services.  Indiana Code § 32-33-4-3 grants a privately held or government-owned hospital

> a lien for all reasonable and necessary charges for hospital care, treatment, and mainte-
> nance of a patient (including emergency ambulance services provided by the hospital)
> upon any cause of action, suit, or claim accruing to the patient, . . . because of the illness
> or injuries that:
>> (1) gave rise to the cause of action, suit, or claim; and
>> (2) necessitated the hospital care, treatment, and maintenance.

Ind. Code § 32-33-4-3(a).  The statute goes on to provide that the lien "applies to any amount obtained or recovered by the patient by settlement or compromise rendered or entered into by the patient."  I.C. § 32-33-4-3(b).  And the statute places certain limitations on the lien, specifically subordinating it to any attorney's lien on the cause, making it inapplicable to accidents and inju-ries within the scope of state and federal workers compensation laws and the federal employers' liability act, prohibiting assignment of the lien, and reducing it by the amount of medical insur-ance recovery related to the injuries.  *Id*.  Further, the hospital lien statute requires hospitals to share in the expenses associated with the collection of the proceeds from a settlement by provid-ing that

> [i]f a settlement or compromise . . . is for an amount that would permit the patient to re-
> ceive less than twenty percent (20%) of the full amount of the settlement or compromise
> if all the liens created under this chapter were paid in full, the liens must be reduced on a
> pro rata basis to the extent that will permit the patient to receive twenty percent (20%) of
> the full amount.

I.C. § 32-33-4-3(c).  The hospital lien statute also provides specific instruction for perfecting the

---

[2] *See* Andrea G. Nadel, Annotation, *Assignability of Proceeds of Claim for Personal Injury or Death*, 33 A.L.R.4th 82 (2005) (analyzing cases in which courts have considered whether an assignment of the proceeds of a personal injury claim violates the prohibition on the assignment of the claim itself).

lien and providing notice to parties obligated to pay the lienholder.  I.C. § 32-33-4-4.

> The Indiana Code establishes a similar lien in favor of providers of ambulance services:
>
> (a) A provider has a lien for all reasonable and necessary charges for the provision of emergency ambulance services to a patient upon any cause of action, suit, or claim accruing to the patient . . . because of the illness or injuries that:
>> (1) gave rise to the cause of action, suit, or claim; and
>> (2) necessitated the provision of emergency ambulance services.

I.C. § 32-33-5-3(a).  The statute describes that the lien "applies to any amount obtained or recovered by the patient by settlement or compromise rendered or entered into by the patient," and it makes the ambulance lien subordinate to an attorney's lien on the claim.  I.C. § 32-33-5-3(b).  Like the hospital lien, the ambulance lien is not applicable to actions and injuries within the scope of workers compensation laws or the federal liability act.  *Id.*  And the statute also gives precise instructions for perfecting the lien and providing notice to parties obligated to pay the lienholder.  I.C. § 32-33-5-4.

We have long recognized that it is within the General Assembly's power to abolish or modify common law with its enactments.  McIntosh v. Melroe Co., 729 N.E.2d 972, 977-78 (Ind. 2000).  And when the legislature acts in such a capacity, we presume that it is aware of the common law and that its intention is to not change the common law beyond what the express terms of its enactments and fair implications allow.  Story Bed & Breakfast, LLP v. Brown County Area Plan Comm'n, 819 N.E.2d 55, 66 (Ind. 2004) (quoting Dunson v. Dunson, 769 N.E.2d 1120, 1124 (Ind. 2002)).

In light of our long-standing prohibition of the assignment of personal injury actions, and considering the legislature's limited creation of liens benefiting only hospitals and ambulance operators (and even then subject to provisions to assure fairness to various interested parties), we decline Midtown's invitation to permit an assignment of proceeds from a personal injury claim as distinguished from the prohibited assignment of the personal injury claim itself.  Moreover, the relief sought by Midtown would operate to extend to chiropractors unbridled collection rights far in excess of the statutory rights provided for hospitals and ambulance operators.

While prohibiting assignments of personal injury claims as well as proceeds thereof, this holding does not, however, affect the obligation of a lawyer to honor the lawyer's own commitments or a client's directives with respect to amounts recovered in personal injury claims. The Indiana Rules of Professional Conduct provide, in relevant part:

> Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

Ind. Professional Conduct Rule 1.15(d). *See, e.g.*, In re Cassady, 814 N.E.2d 247, 248 (Ind. 2004) (lawyer had "signed an agreement" with the client's medical provider assuring that the provider's bill would be paid out of any settlement); In re Allen, 802 N.E.2d 922, 924-25 (Ind. 2004) (lawyer had "sent to the chiropractor a 'letter of protection,' which provided that the doctor would be paid from the proceeds of any personal injury settlement"); In re Summers, 786 N.E.2d 1132 (Ind. 2003) (laywer had provided a "letter of assurance" advising the client's physician that payment for medical treatment would be made upon settlement); In re Kirby, 766 N.E.2d 351 (Ind. 2002) (lawyer had "executed a 'Doctor's Lien' by which the client's medical creditor was to have a lien on settlement proceeds"); In re Alvarez, 755 N.E.2d 162 (Ind. 2001) (lawyer had sent letter to physician "informing him that his medical fees would be paid out of any recovery"). Such an obligation of a lawyer to pay medical providers from settlement proceeds does not arise by reason of the law of assignments, but by virtue of the lawyer's own agreement or the lawyer's special obligation to abide by a client's directives.

Indiana law prohibits assignments of personal injury claims, and we decline to alter our common law to distinguish between assignments of claims and assignments of their proceeds, so as to permit the latter. Midtown's assignment is not enforceable, and Illinois Farmers is entitled to judgment as a matter of law. We affirm the trial court's entry of summary judgment.

Shepard, C.J., and Rucker, J., concur. Boehm, J., dissents with separate opinion in which Sullivan, J., concurs.

8

**Boehm, J., dissenting.**

I respectfully dissent. For the reasons given by the Maryland Court of Appeals quoted by the majority, I would reverse the trial court. The reasons for refusing to permit assignment of tort claims do not apply to the assignment of an interest in the proceeds of the claim. It is one thing to say we do not want unliquidated tort claims to become the subject of a secondary market in which attorneys and others can buy up claims and prosecute them when they would otherwise remain unasserted. It is quite another to say that a tort claimant should not be able to obtain treatment by giving the health care provider what amounts to a security interest in the proceeds of a claim that is not yet reduced to judgment. For that matter, I see no reason why an assignment to any creditor of the claimant should be prohibited if the claimant and the creditor can agree on that arrangement and the terms of the assignment do not shift control of the claim to the creditor. After a simple assignment of an interest in the proceeds the injured party retains control of the lawsuit and the interest of the assignee provider is fixed at the amount of the charge for the service.

The fact that the legislature has chosen to create a statutory lien in favor of hospitals, but not in favor of chiropractors does not seem relevant to me. A statutory lien arises in favor of the hospital whether or not the claimant agrees to it. The statute essentially protects the public and promotes service to the injured by protecting the financial interests of hospitals who often may be called upon for emergency services under circumstances not permitting any consensual arrangement with the injured person. Moreover, the public has an interest in seeing that hospitals are adequately funded and do not get stiffed by deadbeats. Neither of these reasons suggests a legislative desire to deny the claimant and a potential creditor the freedom to contract their own arrangement to secure payment. By permitting an assignment, the law would not require preferential treatment to anyone. No extension of rights is conferred on anyone beyond recognition that private parties can arrange their own affairs as they choose, subject to public policy considerations. I see no such policy here, and believe the Court of Appeals correctly reversed the trial court.

Sullivan, J., concurs.